IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

JOSEPH M. EADS,

        Plaintiff,

v.                            Case No. 2:08-cv-00937

ROBERT CASTLE, CODY JOHNSON,
CORPORAL BOB KOONTZ, TIM POWELL,
DIANA SEYMOUR, TERRY STEWART,
JEBRAS TERRY, JOHN MCKAY,
OFFICER CHAMPLIN, and JOHN KING,

        Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

This is a civil rights case in which Plaintiff alleges that he was subject to the use of excessive force by correctional officers at the South Central Regional Jail ("SCRJ"), and that he was maliciously prosecuted on assault charges in Kanawha County Magistrate Court by the defendants, following this incident. Pending before the court is the defendants' Motion to Dismiss or, in the alternative, for Summary Judgment (docket sheet document # 11).

This matter is assigned to the Honorable Joseph R. Goodwin, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY

Plaintiff's Complaint, which was filed on July 22, 2008, alleges as follows:

On March 1, 2008, the Plaintiff Joseph Eads was at out door recreation and there was CO Seymour and CO Johnson at the same time. If I'm not mistaken, that's not proper procedure. As I entered A4, Inmate Michael Cottrell was in the shower. After I entered the section, Andre Williams [sic; Williamson] followed me in. CO Terry Stewart was screaming at us to lock down. At which time my door was closed due to A4 is a confined section and when one inmate comes out to take a shower or to go to outdoor rec. after he is done, his door shuts and the next inmate[']s door opens. CO Stewart calls for officer assistance to A4. At this time I was standing under the TV when CO Robert Castle runs into A4. At this time he singles me out of the 3 inmates and runs directly at me, grabbing a hold of my chest, and slipped and fell to the floor. CO Stewart just got done mopping the floor. As CO Castle fell CO Stewart jumped on my back. I went to the floor and then CO Seymour, CO Tim Powell put me in restraints. After I was in restraints CO Stewart started punching me in my face repeatedly, screaming he was going to kill me. Tim Powell was kneeing me viciously in my ribs, 10-15 times. The other officers had to pull CO Stewart off of me from the malicious beating and unnecessary force that took place at that time. CPL Koontz and CO Cody Johnson was an eye witness of this. As they were taking me out of A4 I went into a seizure. Before leaving A4, Terry Stewart kicked me in my eye cutting it open. As I started to seizure Officer Robert Castle and Diana Seymour called medical for a nurse. I don't remember anything after that time. As I got up walking to medical, CO Stewart was stating "Your [sic; you're] not big Eads now are you" stating and asking me if he hit me hard enough. The other officers had to drag him away from me.

At this time I had blood all over my face and stomach from the cut around my eye. I entered medical. As I entered medical with CPL Koontz, CO Seymour, [and] CO Castle, Terry Stewart [was] right behind us while I was in restraints trying to jump me again. CPL Koontz ordered CO Stewart to leave the area. CPL Koontz told CO Seymour to come clean up the mess and blood without

2

taking pictures.  They would not take pictures of me until I was cleaned up.  They took pictures of my eye and my ribs and back were [sic; where] the officers beat me. Then I was taken to a non contact room and for about 2 hours I sat there in full restraints.  Then CPL Koontz and several other officers came and escorted me to A4-4 and then the following day an officer brought sworn statement forms to the whole section.  11-15 inmates wrote statements about what happened that night and what they saw.  I Joseph Michael Eads had to be put on medication because of the incident that took place.  My nerves were shot.  I couldn't sleep think straight thinking at any given time they were going to run up in my cell and do it again.  To viciously attack me in my sleep.  I still wake up at night thinking of when it is going to happen again, every time a door opens.  I am still in A4, the same section the incident took place. I have been here for 5 months now.  LT Rogers keeps telling me at the ADS Hearings that if I plead guilty to the charges that I am facing, mal. battery on an officer, that he will move me to population.  I'm not pleading guilty to something I didn't do.

(# 2 at 4-6).  Plaintiff's Complaint further alleges:

On or about March 1, 2008, Corporal McGill, Corporal Koontz, and the other Defendants encouraged and persuaded Robert Castle to press malicious assault charges against the Plaintiff in the Kanawha County Magistrate Court. This offense carries a penalty of 3 to 15 years in DOC. However, this charge was dismissed for lack of probable cause.  Nevertheless, the Defendants maliciously prosecuted the Plaintiff.  The Defendants also violated the Plaintiff's 4th, 5th, 8th and 14th Amendment U.S. Constitutional Rights by charging and prosecuting the Plaintiff for a felony offense without probable cause. The Plaintiff seeks monetary relief and compensation as stated in Heck v. Humphrey for these constitutional violations

John McKay and John King approves and allows officers at SCRJ to beat inmates.  As a result, the Plaintiff was beaten and battered by the other Defendants on March 1, 2008.

(Id. at 7).  Plaintiff's Complaint states that he is suing the defendants in both their individual and official capacities, and

3

that he seeks compensatory and punitive damages in the amount of $10,000,000. (Id. at 8).

On October 15, 2008, the defendants filed the instant Motion to Dismiss or, in the alternative, for Summary Judgment, with exhibits (# 11) and an accompanying Memorandum of Law (# 12).  On October 23, 2008, pursuant to the holding in Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Plaintiff was notified of his right and obligation to respond to the defendants' motion and deadlines were set for a response and reply (# 13).

On October 28, 2008, Plaintiff filed a Motion for Appointment of Counsel (# 14), in which he indicated that he was functionally illiterate, and that he had been receiving assistance from another inmate in the preparation of his legal documents.  On November 12, 2008, the undersigned denied Plaintiff's Motion for Appointment of Counsel without prejudice (# 23).

On December 5, 2008, the court received a letter from the inmate who had been assisting Plaintiff, which indicated that the inmate had been placed in segregation and did not have access to Plaintiff or his legal documents, and requested a 30-day extension of time to assist Plaintiff in preparing a response to the defendants' motion (# 24).

On December 12, 2008, the undersigned granted Plaintiff's letter-form motion for an extension of time and set new deadlines for response and reply briefs (# 25).  The Order granting the

motion also notified Plaintiff that, even if he had the assistance of another inmate in preparing his response, he was required to sign the documents himself.  (<u>Id.</u>)

On February 12, 2009, Plaintiff filed his Response, including exhibits. (# 26).  The defendants did not file a reply brief.  The matter is ripe for determination.

<b><u>STANDARD OF REVIEW</u></b>

The defendants have filed a Motion to Dismiss or, in the alternative, for Summary Judgment.  It is appropriate, given the exhibits attached to defendants' Memorandum, to resolve this case pursuant to Rule 56, Federal Rules of Civil Procedure, and not as a motion to dismiss.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment for a moving party "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Summary judgment is properly granted where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986); <u>see also</u>, <u>Atkinson v. Bass</u>, 579 F.2d 865 (4th Cir. 1978), <u>cert. denied</u>, 439 U.S. 1003

(1978).

Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

If the moving party meets this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); Id. at 322-23.

> [The] adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

6

"[T]he court is obliged to credit the factual asseverations contained in the material before it which favor the party resisting summary judgment and to draw inferences favorable to that party if the inferences are reasonable (however improbable they may seem)." Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980); see also, Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985); Scott v. Greenville County, 716 F.2d 1409, 1411 (4th Cir. 1983).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## ANALYSIS

The defendants' motion asserts that Plaintiff's Complaint should be dismissed because Plaintiff failed to exhaust all of the available administrative remedies concerning his claims. The defendants further assert that Plaintiff's claims against them in

7

their official capacities are barred by the Eleventh Amendment of the United States Constitution.  Finally, to the extent that they are being sued in their individual capacities, the defendants assert that the force used against Plaintiff was necessary under the circumstances, that there was no violation of Plaintiff's federal constitutional rights, and that the defendants are entitled to qualified immunity.  The undersigned will address each of these assertions in turn.

**A.    Exhaustion of Administrative Remedies.**

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") states that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a).   "Prison conditions" means " . . . conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings."   18 U.S.C. § 3626(g)(2).   A "prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."   28 U.S.C. § 1915A(c).

In <u>Booth v. Churner</u>, 532 U.S. 731 (2001), the Supreme Court of the United States held that exhaustion of administrative remedies is mandatory, regardless of the type of relief sought or offered through the administrative procedures. <u>Id.</u> at 741. In <u>Booth</u>, the Court required exhaustion even where the grievance process does not permit the award of money damages, and the prisoner seeks only money damages, as long as the grievance tribunal has authority to take some responsive action. <u>Id.</u>

In <u>Porter v. Nussle</u>, 534 U.S. 516, 531 (2002), the Court held "that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or other some wrong."  Not only must a prisoner exhaust his administrative remedies, but he must also do so properly.  Proper exhaustion "'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits.'"  <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S. Ct. 2378, 2385 (2006) (quoting <u>Pozo v. McCaughtry</u>, 286 F.3d 1022, 1024 (7th Cir. 2002). [Emphasis in the original.]) That is, a prisoner must complete the administrative process in accordance with the applicable procedural rules of the process, including the deadlines.

The Court ruled in <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007), that an inmate's failure to exhaust remedies under the PLRA is an

affirmative defense; the inmate need not demonstrate in his complaint that he has exhausted applicable remedies.  <u>Jones</u> also held that an inmate does not automatically fail to exhaust when the inmate sues one or more defendants not named in the pertinent grievances.  <u>Id.</u>, at 218-19.  If a complaint contains claims, some of which have been exhausted, and some of which have not been exhausted, the entire complaint is not dismissed; the court proceeds only on the exhausted claims.  <u>Id.</u>, at 219-24.

The West Virginia Regional Jail and Correctional Facility Authority (hereinafter the "WVRJA") has an inmate grievance procedure which provides that an inmate may file a grievance with the Administrator of their facility.  If the inmate is dissatisfied with the decision of the Administrator, he or she may appeal such decision to the WVRJA's Chief of Operations, followed by another appeal to the Office of the Executive Director.  (# 11, Ex. 2).

The defendants' motion contends that Plaintiff failed to exhaust the available administrative remedies before filing his Complaint.  In particular, their Memorandum of Law states:

> A careful review of Inmate Eads['] institutional file reveals that the inmate has filed one grievance, but did not file an administrative appeal concerning the subject matter of this litigation.

(# 12 at 4).  The defendants have provided an affidavit from Henry R. Robinson, Jr., Deputy Chief of Operations for the WVRJA.  The affidavit states that Plaintiff filed a grievance appeal at the level of the Chief of Operations, but did not appeal to the

10

Executive Director. (# 11, Ex. 1 at 3). The defendants did not provide copies of the grievance documents with their motion and memorandum.

Plaintiff's Response contends that he did file an administrative appeal to the Executive Director of the WVRJA. (# 26 at 6). Specifically, he states:

> Mr. Robinson's affidavit erroneously contends, though, that the plaintiff did not follow through to request a review by the office of the Executive Director. Plaintiff did in fact request a review of the same, completing the third and final level of the grievance procedure promulgated by the [WVRJA]. The plaintiff attaches hereto his own declaration attesting to the fact that [he] filed not just the one form claimed in the defendants' memorandum or the second form sworn to by Deputy Chief Robinson, but that the plaintiff also requested a review by the Executive Director thereby exhausting administrative remedies. Exhibit 1.

(Id.) Plaintiff asserts that his declaration entitles him to a presumption that he met the exhaustion requirement. (Id. at 7). Plaintiff, likewise, did not provide any of the grievance documentation with his Response. However, Plaintiff's declaration states that he lost his copies of the grievance documents when he was transferred from the custody of the WVRJA into the custody of the West Virginia Division of Corrections. (# 26, Ex. 1, ¶¶ 5-7).

Because exhaustion of administrative remedies is an affirmative defense, the burden of proof of that defense is on the defendants. The undersigned proposes that the presiding District Judge **FIND** that there is a genuine issue of material fact as to whether or not Plaintiff exhausted his administrative remedies

concerning the events that give rise to his section 1983 Complaint, and that, therefore, the defendants are not entitled to judgment as a matter of law on that basis.

**B.    Eleventh Amendment and <u>Will</u> Doctrine**

Plaintiff's Complaint seeks money damages "against each Defendant in his/her individual and/or official capacity." (# 2, at 5). All the defendants assert that, as State employees, they are immune from liability for actions taken in their official capacities. (# 12 at 10).

The Supreme Court, reading § 1983 in conjunction with the Eleventh Amendment, ruled in <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989), that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." A state official sued in his individual capacity is not protected by the Eleventh Amendment and is a "person" under § 1983. <u>Hafer v. Melo</u>, 502 U.S. 21, 31 (1991).

Plaintiff's Response to the defendants' motion asserts that the Eleventh Amendment bar does not apply to claims for injunctive or declaratory relief sought against state officials in their official capacity. <u>Verizon Md., Inc. v. Public Serv. Comm'n of Md.</u>, 535 U.S. 635, 645 (2002). While this is true, Plaintiff has not requested any injunctive or declaratory relief in his Complaint. Rather, he seeks only monetary damages, which are barred by the Eleventh Amendment when sought from state officials

in their official capacity.

The undersigned proposes that the presiding District Judge **FIND** that the defendants, in their official capacities, are not "persons" under § 1983, and are not amenable to suit thereunder. Furthermore, to the extent that Plaintiff has sued the defendants in their official capacities, the undersigned proposes that the presiding District Judge **FIND** that the defendants are immune from suit under the Eleventh Amendment to the United States Constitution, and that the defendants are entitled to judgment as a matter of law on Plaintiff's claims brought against them in their official capacities.

## C. Eighth Amendment claims against defendants in their individual capacities.

As detailed above, Plaintiff's Complaint alleges that the defendants subjected him to cruel and unusual punishment through the use of excessive force against him on March 1, 2008. The defendants' version of the facts is as follows:

> Inmate Joseph Eads is a convicted felon, serving time based on convictions for malicious wounding, larceny, domestic battery, battery of an officer and various other misdemeanor crimes. (Exhibit 3 of Motion to Dismiss.) On March 1, 2008, Inmate Eads was housed in the lock-down section of the South Central Regional Jail.

> At approximately 5:17 a.m., Inmate Cottrell # 35975 was out of his cell for a shower, and Officer Seymour was escorting inmate Eads back into the section following a medical visit. (Exhibit 4 of Motion to Dismiss.) When Eads arrived in the section Inmate Cottrell started yelling at inmate Eads stating: "hey man they came in your cell and took everything." (Exhibit 4 of Motion to

13

Dismiss.)  This angered inmate Eads, who became irate and refused to return to his room.  Both inmates were ordered to return to their rooms.  Neither complied.  (Exhibit 4 of Motion to Dismiss.)  As the tension grew, Officer Johnson arrived with inmate Andre Williamson # 32685. Seeing the disturbance, Inmate Williamson started walking around the dayroom yelling: "Hey [we're] not locking down either."  (Exhibit 4 of Motion to Dismiss.)  Officer Terry Stewart ordered all three inmates to lockdown. None complied.  Seeing that the situation escalated, Officer Terry called for officer assistance.  Officers Castle, Champlin, Powell, Cpl. Koontz, [and] Officer Mason arrived in the section.  (Exhibit 5 of Motion to Dismiss.)

Cpl. Koontz attempted to take control of the Inmate [Williamson] by forcing him against the wall.  At the same time, Inmate Eads charged towards Officer Castle and grabbed Officer Castle by the shirt.  Officer Castle attempted to perform an inside take down, but slipped on the floor, landing on his knees.  Eads was able to pull away and seized Officer Castle in a chokehold.  Officer Stewart rushed to rescue Officer Castle, and struck inmate Eads in the left eye.  This caused Eads to loose [sic; lose] his grip and Officers Castle, Stewart and Champlin attempted to secure Eads.  Eads continued to struggle, and Officer Stewart attempted to control Eads' head by applying pressure to the mandibular angle. Inmate Cottrell rushed out of the shower and attacked Officer Champlin from behind.  Cottrell drew back his fist and repeatedly pummeled Officer Champlin on the right side of his face and mouth.  Inmate Cottrell then grabbed Officer Champlin around the neck and started to choke him.  Officer Johnson seized Inmate Champlin [sic; Cottrell] and forced him to the floor.  (Exhibits 4 and 5 of Motion to Dismiss.)  All the inmates were secured and taken to medical for an evaluation.  Plaintiff had minor abrasions, and bruising.  (Exhibit 6 of Motion to Dismiss.)

(# 12 at 5-6).

The defendants' Memorandum of Law then addresses the law applicable to an excessive force claim.  The Memorandum notes:

When evaluating use of force by correctional officers, the ultimate question is whether the use of

14

physical force was undertaken in a good faith effort for legitimate needs, or whether the force was utilized maliciously and sadistically with the intent of causing harm. <u>Whitley v. Albers</u>, 475 U.S. 312, 106 S. Ct. 1078 (1986); <u>Hudson v. McMillian</u>, 501 U.S. 1, 112 S. Ct. 995 (1992).  First, the Court must look at whether or not there was a need for application of force.

* * *

The question then becomes what amount of force is reasonable and necessary under these circumstances to control Plaintiff's out of control behavior.  <u>Graham v. Connor</u>, 490 U.S. 386, 109 S. Ct. 1865 (1989).

(<u>Id.</u> at 6-7).

As noted by the defendants, Regional Jail Policy and Procedure authorizes the use of force in situations of self-defense or defense of a third person, to enforce institutional regulations, to prevent the commission of a crime, and to prevent the destruction of property.  (# 11, Ex. 7 at 3).  As further noted by the defendants:

The use of force available by regional jail officers range[s] from officer's presence and verbal commands to the use of deadly force.  Plaintiff's behavior evidences that mere officer presence and verbal commands were ineffective.  (Exhibits 4 and 5 of Motion to Dismiss.) Many factors go into the determination of how much force is reasonable.  Those factors include the inmate's behavior, presence of an immediate threat, inmate's size, demeanor, and reputation for violence.

(<u>Id.</u> at 7).

The defendants assert that:

Plaintiff's behavior and reputation for violence made it necessary to use empty hand control techniques.  The [WVRJA] has the discretion and ability to utilize impact munitions, baton, other immediate weapons, and even deadly force.  Thus, when analyzing the above fact

> pattern, the amount of force used was reasonable and
> necessary given the Plaintiff's noncompliance and level
> of active aggression.  Indeed, Inmate Eads' chokehold on
> Office Castle may have warranted an even higher level of
> response than was given.

(<u>Id.</u> at 7-8).  The defendants further argue that the force used to control Plaintiff "was not the result of improper motives, but was a reasoned and measured response to a disruptive and combative inmate."  (<u>Id.</u> at 9).  Accordingly, the defendants assert that Plaintiff's right to be free from cruel and unusual punishment was not violated, and that the defendants are entitled to qualified immunity on Plaintiff's Eighth Amendment claims.  (<u>Id.</u> at 11).

Public officials are not liable for monetary damages if they can show that their conduct did not violate clearly-established statutory or constitutional rights of which a reasonable person would have known.  <u>See</u> <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999); <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  Qualified immunity exists to protect officers in the performance of their duties unless they are "plainly incompetent" or they "knowingly violate the law."  <u>Doe v. Broderick</u>, 225 F.3d 440, 446 (4th Cir. 2000).

In ruling on an issue of qualified immunity, a court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  If the allegations do not give rise to a constitutional violation, no further inquiry is

necessary.  <u>Id.</u>  If, on the other hand, a violation can be shown, then the court must determine whether the right was clearly established in the specific context of the case.  <u>Id.</u>

In <u>Whitley v. Albers</u>, 475 U.S. 312 (1986), the Supreme Court addressed the standard to be applied to a claim of cruel and unusual punishment based on the use of excessive force by prison guards.  The Court found that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  <u>Id.</u> at 319.  As noted by the defendants, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the purpose of causing harm.'"  <u>Id.</u> at 320-21.

In <u>Hudson v. McMillan</u>, 503 U.S. 1 (1992), the Supreme Court held that use of excessive physical force against an inmate may constitute cruel and unusual punishment even when the inmate does not suffer serious injury.  The Court held "that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in <u>Whitley</u>: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  503 U.S. at 6.  The majority opinion noted that "[t]he objective component of an

Eighth Amendment claim is therefore contextual and responsive to 'contemporary standards of decency.'"  503 U.S. at 8. [Citation omitted.]

> In the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. [Citation omitted.] This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today. * * *
>
> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. [Citation omitted.] The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." [Citations omitted.]

Id., at 9-10. Near the conclusion of the opinion, Justice O'Connor wrote: "To deny, as the dissent does, the difference between punching a prisoner in the face and serving him unappetizing food is to ignore the 'concepts of dignity, civilized standards, humanity and decency' that animate the Eighth Amendment." Id., at 11.

Plaintiff's Response to the defendants' Motion for Summary Judgment contends that Plaintiff was not exhibiting violent behavior at the time of this incident. He states that he was simply requesting to speak with a correctional officer about his personal property being seized. He claims that "Officer Castle

initiated physical contact by charging the plaintiff and grabbing

hold of him." (# 26 at 11). Plaintiff further asserts:

> Once the defendant [sic; plaintiff] had been subdued, placed in handcuffs, leg irons, and surrounded by correctional officers, any perceived need for force would have been over. However, the physical contact with the plaintiff did not end at that point. No, it was only after the plaintiff had been fully restrained, that Stewart proceeded to strike the plaintiff in the face repeatedly while Powell was kneeing the plaintiff in his ribs. Stewart was obviously out-of-control in a fit of rage, stating (by his own admission) that he would kill the plaintiff. Stewart and Koontz Incident Reports (exhibits to Motion to Dismiss).

(Id.) Plaintiff further contends that his injuries were worse than

those described by the defendants. He states:

> As mentioned above, the plaintiff was taken to SCRJ's medical unit at the conclusion of the altercation after having a seizure en route. During her evaluation of the plaintiff, Nurse Grimmett documented a half-inch gash over his left eye. Grimmett Incident Report (Exhibit 6 to Motion to Dismiss). She also ordered further diagnostic testing for possible fractures in the plaintiff's nose, right shoulder, and broken right ribs. Id. Although Stewart recalled it as a punch to the left eye, the plaintiff certainly presented evidence of a cut near his eye. Id.
>
> * * *
>
> The injuries received by the plaintiff, grossly disproportionate to those incurred by any of the defendants, could easily lead a reasonable jury to find for the plaintiff. Punches to the face are not merely "control techniques," but are by their very nature attempts to punish or cause harm. One simply does not brutally attack a fully restrained prisoner but for the presence of malicious and sadistic intent.

(Id. at 12).

With his Response, Plaintiff has provided eight statements from other inmates who were housed on section A4 at the time of this incident, several of which indicate that Plaintiff was restrained during some of the use of force against him.  In particular, an inmate named Michael K. Merrifield gave a statement which states:

> At approx. between 4:00 a.m.-5:00 a.m. I was awoke by a bunch of thumping sounds and yelling.  I jumped out of bed & went to my window - cell 5.  The incident had already started.  I saw Joey Eads laying on his stomach with a handful of guards restraining him.  He was not fighting back & was restrained.  He was being beaten and jumped by the guards.  I counted 23 face and head punches from, C.O. Stewart that landed on Joey Eads while yelling "I'll kill you Motherfucker."  This was when and after he was defenseless.  His arms were fully restrained & he could not block those violent punches.  His head was bouncing off the floor with each punch.  He was punched, kneed & kicked countless times.  All unnecessary & extremely excessive & violent.  Inmate Michael Cottrell commenced to defending Joey Eads, pulling the CO's off his head.  While deploying the good Samaritine [sic; Samaritan] Act, he too was assaulted and beaten.  10 minutes later, CO Seymour cleaned the pool of blood up without taking photos.

(# 26, Ex. 5).  Another statement from inmate Cody Taylor states:

> I was about to go to sleep at about 5:10 a.m. and I heard a loud noise in the pod.  I looked out the window and a-4/4 was on the ground getting hit by a CO.  I'm fairly new so I don't know the guard's name but he was hitting him repeatedly while he was cuffed and being restrained.  Me and my roomate [sic; roommate] both witnessed the same thing and both had shared thoughts about it being way to [sic; too] aggressive from a CO's position.

(Id., Ex. 7).  Inmate Richard Turner also indicated that he saw Plaintiff being beaten by CO Stewart "repeatedly with his fist in Joey's face," that CO Stewart was yelling "I'll fucking kill you"

20

and "I hope you die," and that all of this happened while Plaintiff
was fully restrained.  (Id., Ex. 8).  These facts are reiterated in
the statements of Michael Cottrell, Samuel Fooce, Kenny Gailland,
Murray Garland, and Michael Williams.  (Id., Exs. 2, 3, 4, 6 and
9).

The defendants did not file a Reply brief or any counter-
evidence within the time ordered by the court.

A review of the incident reports filed by the various
correctional officers who were involved in this incident and the
statements of the inmates who witnessed these events indicates that
there is a genuine issue of material fact as to whether Plaintiff
was restrained at the time that force was used against him, and as
to the amount of force actually used.  Clearly, if Plaintiff was
repeatedly kicked and punched as he claims, and if he was
restrained at that time that such force was used, under an
objective standard of reasonableness, a fact-finder could find that
such force was used in a malicious or sadistic manner in an attempt
to cause harm, and not in a good faith effort for legitimate needs.
Furthermore, under those circumstances, a reasonable officer would
have to know that his conduct violated the law.

The incident reports submitted by the defendants are not sworn
statements and are insufficient evidence upon which to grant
summary judgment.  Similarly, Plaintiff's witness statements,
although some were witnessed, do not appear to have been given

under penalty of perjury.

The undersigned proposes that the presiding District Judge **FIND** that there is a genuine issue of material fact concerning Plaintiff's Eighth Amendment claims against the defendants, and that, in the current posture of the case, the defendants are not entitled to qualified immunity and not entitled to judgment as a matter of law on those claims.

### D. Malicious prosecution claims against defendants in their individual capacities.

Plaintiff's Complaint also asserts that the defendants encouraged Officer Castle to pursue charges against Plaintiff in the Kanawha County Magistrate Court, and that the prosecution of those charges was undertaken in a malicious manner, without probable cause, in violation of Plaintiff's constitutional rights. (# 2 at 3). According to Plaintiff's Complaint, the malicious assault charge brought against him was dismissed on March 25, 2008, for lack of probable cause.

"[T]here is no such thing as a [42 U.S.C.] § 1983 malicious prosecution claim . . . [Such a claim] is simply founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution . . . ." Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000). When alleging an unreasonable seizure, arrest or prosecution, such a claim is governed by the Fourth Amendment. Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996). To establish a

22

Fourth Amendment false arrest or malicious prosecution claim, Plaintiff must establish that probable cause did not exist for his arrest. Id. Probable cause is defined as facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing that the suspect has committed an offense. Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992). If probable cause existed for Plaintiff's charges, then Plaintiff's Fourth Amendment claim must fail.

The defendants wholly failed to address this claim in their Motion to Dismiss or, in the alternative, for Summary Judgment.

There is insufficient information before the court at this time upon which to evaluate this claim. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that there is a genuine issue of material fact with regard to Plaintiff's malicious prosecution claim, and that the defendants are not entitled to judgment as a matter of law on that claim.

**E.   Plaintiff's supervisory liability claims.**

Plaintiff's Complaint also alleges that defendants John McKay and John King "approve[] and allow[] officers at SCRJ to beat inmates" and that such tacit approval resulted in Plaintiff's beating on March 1, 2008. (# 2 at 7). Plaintiff's Response brief further states:

> In their supervisory roles, Defendants Koontz, McKay and
> King created a policy or custom allowing or encouraging

23

> illegal acts such as the plaintiff was subjected to. Each was grossly negligent in supervising their subordinates which caused the plaintiff to be subjected to excessive use of force.

(# 26 at 10-11).

The defendants' motion failed to address Plaintiff's supervisory liability claims. Therefore, the undersigned proposes that the presiding District Judge **FIND** that additional proceedings are necessary to evaluate these claims.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** the defendants' Motion to Dismiss or, in the alternative, for Summary Judgment (# 11) and leave this matter referred to the undersigned United States Magistrate Judge for discovery and further proceedings.

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which

24

objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to opposing parties, Chief Judge Goodwin and this Magistrate Judge.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff and to transmit a copy to counsel of record.

| | |
|---|---|
| June 15, 2009 | *Mary E. Stanley* |
| Date | Mary E. Stanley |
| | United States Magistrate Judge |